UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUTH ELLEN KRUGER, ET AL.,

                Plaintiffs,

     v.

UNITED AIR LINES, INC, ET AL.,

                Defendants.

_____/

No. C 06-04907 MHP

**MEMORANDUM & ORDER**
**Re: Defendants' Motion for Summary Judgment**

On August 14, 2006 plaintiffs Ruth Ellen Kruger and Daniel Ronald Kruger, as individuals and on behalf of their marital community, filed a complaint against United Airlines, Inc., UAL Corporation (collectively "United"), Xiaoyan Wei, Yaping Huang, and Yuying Huang, alleging various tort causes of action for injuries sustained when Kruger was a passenger on a United flight. On January 5, 2007, default was entered as to the three individual defendants Wei, Huang, and Huang.  Now before the court is United's motion for summary judgment or partial summary judgment.

BACKGROUND[1]

Plaintiffs Ruth Ellen Kruger and Ronald Kruger are residents of Issaquah, Washington. Defendants United Airlines, Inc. and UAL Corporation are Illinois corporations.  Defendants Wei, Yaping Huang, and Yuying Huang are California residents and domicilaries.  The dispute in this case concerns an incident that occurred when plaintiff Ruth Kruger boarded United Flight 794 from San Francisco to Seattle on August 20, 2004.  Defendants Wei, Huang, and Huang were passengers on the same flight.

On August 20, 2004 defendants Wei, Huang and Huang attempted to board Flight 794,

despite having been instructed not to do so. According to the plaintiffs, the three defendants were disorderly and aggressive. They were stopped at the end of the jetway and prevented from boarding. Shortly thereafter, Ruth Kruger began boarding the flight and was told by an United flight attendant to wait on the jetway a few feet behind Wei, Huang and Huang. While the passengers waited, one of the three individual defendants was swinging a backpack. As Kruger attempted to move backwards to avoid it, she was struck in the back of the head by the backpack, which contained a hard and heavy object. Kruger felt pain in her head as a result of the impact and held her head. She boarded the plane at the instruction of the United flight attendant. Once seated, she felt dazed and nauseated. She pressed the call button and asked the responding flight attendant for tylenol after reporting that she had been struck in the incident. During the course of the flight, Kruger became increasingly ill; she vomited, lost consciousness, and fell on the floor outside the lavatory. At one point, flight attendants attempted to help her stand, but she fell again and hit her head. For the rest of the flight, Kruger remained on the floor of the lavatory with pillows placed around her. She states that she was unconscious for portions of the flight but does remember experiencing "excruciating pain, terror, emotional trauma, anxiety, and fear." Compl. ¶ 24. Upon landing in Seattle, an ambulance took her to a local hospital.

Plaintiffs seek damages for injuries sustained by Ruth Kruger while boarding the flight. The present dispute concerns whether plaintiffs can proceed against United under the Montreal Convention. The Convention for Unification of Certain Rules for International Carriage by Air, Done at Montreal on 28 May 1999, reprinted in S. Treaty Doc. No 106-45, 1999 WL 33292734 (2000) (entered into force Nov. 4, 2003) ("Montreal Convention"). Ruth Kruger alleges that she purchased a round-trip ticket for international travel on United Airlines and Quantas Airlines from Seattle, Washington to Brisbane, Australia. The trip involved five segments on the two carriers. The outbound portion of the trip included a United flight from Seattle to Los Angeles and a Quantas flight from Los Angeles to Brisbane. The return portion of the trip included a Quantas flight from Bisbane to Los Angeles; a United flight from Los Angeles to San Francisco; and, finally, United flight 794 from San Francisco to Seattle. In the complaint, Ruth Kruger alleges that Flight 794 was

2

1  part of an "undivided international carriage" and thus the the Montreal Convention applies to this

2  dispute. Compl. ¶¶ 12-13.

3

4  LEGAL STANDARD

5       Summary judgment is proper when the pleadings, discovery and affidavits show that there is

6  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

7  matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the

8  case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is

9  genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

10  party. Id. The party moving for summary judgment bears the burden of identifying those portions

11  of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

12  fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party

13  will have the burden of proof at trial, the moving party need only point out "that there is an absence

14  of evidence to support the nonmoving party's case." Id.

15       Once the moving party meets its initial burden, the nonmoving party must go beyond the

16  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

17  genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving

18  party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.

19  1994). The court may not make credibility determinations, and inferences to be drawn from the

20  facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New

21  Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

22       The moving party may "move with or without supporting affidavits for a summary judgment

23  in the party's favor upon all [claims] or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and

24  opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be

25  admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

26  matters stated therein." Fed. R. Civ. P. 56(e).

27

28

3

1  DISCUSSION

2  I.    Motion for Summary Judgment

3        Plaintiffs' complaint, as amended, alleges causes of action under the Montreal Convention.

4  Defendants move for summary judgment on the grounds that the incident in dispute occurred on a

5  domestic flight, which is not covered by the Montreal Convention.  Plaintiffs, in turn, contend that

6  the incident occurred on a flight that was part of a single international flight operation, and therefore

7  their claims are properly brought pursuant to the Montreal Convention.  The court's task is a basic

8  one: to determine whether plaintiffs' injuries were sustained aboard a flight covered by the

9  Convention.

10       By its terms, the Montreal Convention governs "all international carriage of persons . . .

11 performed by aircraft for reward ." Montreal Conv., Art. 1(1).   The Convention defines international

12 carriage to mean:

13        any carriage in which, according to the agreement between the parties, the place of
          departure and the place of destination, whether or not there be a break in the carriage or a
14        transhipment, are situated either within the territories of two State Parties, or within the
          territory of a single State Party if there is an agreed stopping place within the territory of
15        another State, even if that State is not a State Party. Carriage between two points within the
          territory of a single State Party without an agreed stopping place within the territory of
16        another State is not international carriage for the purposes of this Convention.

17 Montreal Conv., art. 1(2).   The provision most relevant to the instant dispute is Article 1(3), which

18 addresses carriage performed by more than one distinct carrier.  That provision provides:

19        Carriage to be performed by several successive carriers is deemed, for the purposes of this
          Convention, to be one undivided carriage if it has been regarded by the parties as a single
20        operation, whether it had been agreed upon under the form of a single contract or of a series
          of contracts, and it does not lose its international character merely because one contract or
21        a series of contracts is to be performed entirely within the territory of the same State.

22 Montreal Conv., art. 1(3).   Thus, the dispositive issue is whether the parties regarded the domestic

23 and international legs of the trip as one undivided carriage.

24       At the outset, the parties disagree on what case law is applicable in interpreting the relevant

25 provisions of the Montreal Convention.  Plaintiffs contend that case law interpreting the Warsaw

26 Convention,[2] the predecessor to the Montreal Convention, is inapposite.  The Montreal Convention

27 replaced the Warsaw Convention in its entirety, and, as plaintiffs note, it is "a treaty that favors

28

4

1  passengers rather than airlines." Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 371 & n. 4 (2d Cir.

2  2004). Nonetheless, courts interpreting the Montreal Convention routinely rely on existing case law

3  under the Warsaw Convention interpreting similar provisions. See, e.g., Onwuteaka v. Northwest

4  Airlines, Inc., No. H-07-0363, 2007 WL 1406419 *1, n.2 (S.D.Tex. May 10, 2007). "Despite its

5  newly aligned purpose, many of the provisions of the Montreal Convention closely resemble those

6  of the Warsaw Convention." Weiss v. El Al Isr. Airlines, Ltd., 433 F.Supp.2d 361, 365

7  (S.D.N.Y.2006). Moreover, the ratification history of the Montreal Convention indicates that the

8  treaty negotiators as well as Congress intended to preserve the case law developed under the

9  Warsaw Convention by adopting similar language in the text of the Montreal Convention. Baah v.

10  Virgin Atlantic Airways Ltd., 473 F.Supp. 2d 591, 595 (S.D.N.Y. 2007) (citing legislative and

11  executive statements on the preservation of Warsaw Convention precedent). Therefore, where the

12  drafters adopted the same or substantially similar language in the Montreal Convention as that of the

13  Warsaw Convention, the court will rely upon precedent developed under the latter to interpret the

14  former.

15      Here, the textual differences in the two treaties are not relevant to the dispute. On the one

16  hand, the Montreal Convention governs "international carriage," while on the other hand the

17  Warsaw Convention addresses "international transportation." Compare Montreal Conv. Art. 1

18  with Warsaw Conv. Art 1. Certainly, the use of a different term in the Montreal Convention may

19  convey a different meaning than that of the Warsaw Convention. The substitution of the word

20  "carriage" in one agreement for the world "transportation" in another, if it conveys any difference in

21  meaning at all, is not relevant here. Plaintiffs do not argue that "carriage" would encompass certain

22  domestic routes that "transportation" would exclude. The argument that the new regime embraces a

23  more passenger friendly approach does not aid plaintiffs in attempting to import an entirely new

24  meaning into "international carriage" from the previous interpretations of "international

25  transportation." Therefore, the interpretive principles employed for determining what flights were a

26  part of "international transportation" are applicable here.

27      The parties agree that the governing inquiry for determining whether the flight was part of

28

5

1    international carriage is the intent of the parties.  As the Ninth Circuit has noted, the text of the

2    Convention, which focuses on the intent of the parties,  "unambiguously indicates that, *at least in*

3    *certain circumstances,* purely domestic air travel can be covered by the Warsaw Convention's

4    definition of international transportation."  Coyle v. P.T. Garuda Indonesia, 363 F.3d 979, 986 (9th

5    Cir. 2004).  And, "[t]ransportation to be performed by several successive air carriers shall be

6    deemed, for the purposes of this convention, to be one undivided transportation, *if it has been*

7    *regarded by the parties as a single operation*, whether it had been agreed upon under the form of a

8    single contract or a series of contracts...."  Id.  (quoting Article 1(3) of the Warsaw Convention and

9    adding emphasis).  The wording of the Montreal Convention is identical.

10        Ninth Circuit case law interpreting the Warsaw Convention directs courts to look to the

11   objective indicia of the parties' intent, namely the issuance of a ticket.  See Coyle, 363 F.3d at 979.

12   Plaintiffs are correct to point out that the Montreal Convention no longer requires the issuance of a

13   ticket for the Convention to apply.  Changes in the mechanics of international travel, however, do

14   not alter the fundamental interpretive principle that objective indications of the parties' intent take

15   pride of place.  Indeed, Article 3 of the Montreal Convention refers to a document of carriage or any

16   other means of preserving information such as the places of departure and destination.  Montreal

17   Conv. Art. 3.  Accordingly, the inquiry begins with the document of carriage or its equivalents.

18   Here, the objective evidence of the parties intent favors defendants' interpretation that the flight was

19   not covered by the Montreal Convention.  Plainitffs have produced only Kruger's boarding passes as

20   documentary evidence of the flight.  Ms. Kruger's boarding passes for the United and Quantas

21   flights do not support plaintiffs' theory. Pls.' Exh. 2 at 33–36. These passes were issued by separate

22   carriers, the flight numbers listed refer to the individual airlines respectively.  Id.  Moreover, the E-

23   ticket Receipt and Travel Itinerary produced by United and issued by it to Ruth Kruger contains no

24   indication that the domestic leg was part of an international itinerary.  Grotch Dec. Exh. C.  In fact,

25   United's E-ticket makes no mention of any international travel.   Ms. Kruger admits that she

26   purchased Los Angeles to Brisbane flights from Quantas via its website and then separately

27   purchased  the Los Angeles to Seattle flights from United via United's website.   On the journey

28

6

1   from Seattle to Brisbane, Ms. Kroger's United and Quantas flights were separated by a day and a

2   half layover in Los Angeles for a trip to Universal Studios and a bus tour of Hollywood. See Pl.'s

3   Exh. 2; Ruth Kruger Dec. ¶ 15.   Thus, the objective indications of the parties' intent are that the

4   Quantas and United flights were separate flights. Where the objective indicia are unambiguous, the

5   court need not consider evidence of the parties' subjective intent.  Coyle v. P.T. Garuda Indonesia,

6   363 F.3d at 991 (citing Sopcak v. Northern Mountain Helicopter Service, 52 F.3d 817 (9th

7   Cir.1995)).

8           Plaintiffs present two additional arguments to rebut the objective evidence. First, they

9   provide evidence to establish that Ms. Kruger intended for the United and Quantas flights to be part

10  of one undivided journey.  Kruger states that she purchased the tickets from the two carriers in order

11  to synch her travels with those of a friend.  Ruth Kruger Dec. ¶¶ 6–8.  She repeatedly states in her

12  declaration that the travel was a round-trip flight.  Id.  Defendants do not attack this assertion of

13  Kruger's intent, although they do object to Kruger's testifying to the ultimate legal conclusion that

14  the flights were in fact an integrated round-trip journey.  However, "one party's unilateral

15  expectation that a domestic flight is part of a single international trip is not enough to convert that

16  expectation into a reality." Lemly v. Trans World Airlines, Inc., No. 85 Civ. 7043 (MJL), 1986 WL

17  5107, *1 (S.D.N.Y. Apr. 29, 1986), aff'd 807 F.2d 26 (2d Cir. 1986) (concluding that domestic flight

18  was not part of international transportation when the domestic and international flights were issued

19  separately, although they were purchased through the same travel agent).

20          Second, plaintiffs contend Ms. Kruger made her intent known to United at several points.  In

21  her declaration, Ms. Kruger alleges that, at the time she purchased her United ticket, she expressed

22  her anxiety to the United ticket agent about missing her connection between the Quantas flight

23  arriving from Brisbane and the United flight from Los Angles to San Francisco.  Ruth Kruger Dec. ¶

24  12. According to Ms. Kruger, the United agent assured her that if she missed her United flight then

25  she would be put on another United flight.  Id.  Ms. Kruger points to this conversation to

26  demonstrate that she communicated her intent that the journey be one undivided international

27  journey and that United shared that expectation.  United objects to these statements in Kruger's

28

7

1   declaration on the basis that they conflict with Ms. Kruger's earlier deposition testimony.   In that

2   deposition, taken on March 5, 2007, Ms. Kruger stated  that she booked both the United and Quantas

3   flights on the respective websites. Dep.  81: 23–82:6.  Thereafter, on May 18, 2007, the declaration

4   of Teresa Hartwig, a United Senior Staff Representative, was filed in which Ms. Hartwig, having

5   reviewed United's records, stated that the records show that Ms. Krueger contacted United on May

6   11, 2004, and made a reservation for a discounted fare to fly round-trip between Seattle and Los

7   Angeles and that she purchased her E-ticket for the flights on May 12, 2004.  Ms. Hartwig also notes

8   that there is "absolutely no information in any of Ms. Krueger's records pertaining to United flights

9   in July and August of 2004  regarding any flights she was taking on Qantas Airways. Nor is there

10  any information at all regarding her intention to travel to or from Australia.".  Hartwig Dec. ¶¶ 2, 3,5

11  and 8.   It was thereafter, in a declaration filed on June 18, 2007, that plaintiff claims to have

12  recalled, refreshed by the Hartwig declaration, a discussion with her husband and reviewing an e-

13  mail he had written, that she had talked with a United agent.  She then goes on to recite a number of

14  details of the now-recalled conversation.   Courts should look with skepticism on post-deposition

15  affidavits of a witness that contradicts the witness' testimony given at an earlier deposition,

16  particularly on such a crucial issue.  See Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262 (9th Cir.

17  1991).

18       However, even if the court considers the declaration it does not persuade the court that the

19  intent of the parties was that the United portion of the journey was part of a "single operation."

20  Certainly there is nothing in United's records to indicate they so intended.  And, certainly, in the

21  words of the Montreal Convention, it was not "agreed upon" even as a part of a series of contracts.

22  The mere discussion with the reservation agent of the need to make connections or even gaining the

23  assistance of the airline in that effort does not indicate the airline understood or intended that the trip

24  be a single operation.   The language of Coyle is instructive here: "Absent an objective showing of

25  actual knowledge by the air carrier of the passengers' overall itinerary - that is, an admission that the

26  airline (or its agent) actually understood the disputed flight to hve been part of the [passenger's]

27  international journey... the tickets (and the objective facts of the ticketing)" show that this was not a

28

8

1  single operation. 363 F.3d at 989. The tickets were not issued by the same travel agent or made as

2  part of a package. They were reserved and paid for separately. The two airlines did not have code

3  sharing agreements and were not partners in the same worldwide alliance. There were no

4  communications between the airlines to coordinate the flights. The facts of one airline's itinerary or

5  ticketing was not reflected on the other airline's itinerary or ticket. Even if Ms. Kruger's statements

6  about the conversation with the United agent are believed, they are not of the type that would "alert

7  an airline of its duties and liabilities. Id. at 993

8      The same evidentiary difficulties apply to evaluating Kruger's statements that Quantas

9  checked her luggage from Brisbane to Seattle, thereby putting United on notice that she was on one

10  undivided journey. Ruth Kruger Dec. ¶ 16 (stating that Quantas checked her luggage from Brisbane

11  to Seattle). This statement is further afield from the type of evidence the Ninth Circuit indicated

12  would be sufficient for establishing an airline's shared expectation. Coyle, 363 F.3d at 993. It is not

13  an admission by United indicating actual knowledge. Moreover, Kruger's communications occurred

14  with Quantas, not with United. Finally, United contests the truth of this assertion, submitting

15  evidence to demonstrate that Kruger's account of checking her bags is inconsistent with the

16  operations of the two airlines. Compare Kruger Dep. 97:15–23 (describing collecting her bags upon

17  arrival at LAX and giving them to a United attendant) with Muller Dec. ¶ 3 (noting that if Kruger

18  had checked her bags from Brisbane to Seattle, she would not have been required to retrieve them at

19  LAX). In any event, even Ms. Kruger's account of the transfer and handling of the luggage is not

20  the type of conduct contemplated by the Montreal Convention and by Coyle. It does not suggest

21  that United regarded the flights as a single operation; it was merely an accommodation as occurs

22  whenever a passenger is transferring from one international flight to another flight. And, it certainly

23  does not represent an undivided transportation that has been *agreed* to by the parties. It was an

24  after-the-fact handling of luggage. There is no evidence that baggage handlers have authority to

25  agree to the terms and conditions of international travel.

26      For the foregoing reasons, the court finds that plaintiff cannot establish that Ruth Kruger's

27  travels discussed above constitute an undivided international carriage" and, therefore, the Montreal

28

9

1    Convention does not apply to this dispute.

2

3

4    II.      Motion to Strike

5           United raises several objections to statements made in three declarations submitted by

6    plaintiffs in opposition to the motion for summary judgment. They also ask the court to strike the

7    objectionable statements. Because the court has not considered the objectionable statements in the

8    declarations of Daniel Krueger and Stuart Frankel, it will not address theres objections.

9           United raises three main objections to Ruth Kruger's declaration. First, United argues that

10   her characterization of the flight as an "international round-trip flight" is an improper attempt to

11   attest to the ultimate legal conclusion in this case. Ruth Kruger Dec. ¶ 4. The court agreees that Ms.

12   Kruger is not qualified to testify to the legal conclusion suggested by this statement and the court

13   does not consider it as such. The objection is SUSTAINED for that purpose.

14          Next, United points to the contradiction in Ruth Kruger's declaration and deposition about

15   the purpose of her flight. In her deposition, Ms. Kruger stated that she had "no particular reason" for

16   traveling to Australia at that particular point of time. Kruger Dep. at 81:1–5. In her subsequent filed

17   declaration, Kruger states that the purpose of her trip was to coordinate flights with her friend. Ruth

18   Kruger Dec. ¶ 7. This discrepancy does not rise to the level of a contradiction, nor does it create a

19   dispute in material fact that would defeat summary judgment. This objection is OVERRULED.

20          Finally, United objects to the contradiction in Ruth Kruger's declaration and her deposition

21   about whether she called United to make reservations. The court has dealt with this issue above and

22   discussed its problems at length.

23          CONCLUSION

24          For the foregoing reasons, the court GRANTS United's motion for summary judgment.

25

26          IT IS SO ORDERED

27   Dated: October 31, 2007                                    _____

28                                                              MARILYN HALL PATEL
                                                                United States District Court Judge
                                                                Northern District of California

10

ENDNOTES

1.  Unless otherwise noted, the facts provided are taken from the Complaint.

2.  The Warsaw Convention was originally adopted in Warsaw in 1929 and amended at The Hague in 1955 and again at Montreal in 1975.  <u>See</u> Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000 (1934), 137 L.N.T.S. 11, reprinted in note following 49 U.S.C. § 40105; The Convention for The Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 as Amended by the Protocol Done at The Hague on 28 September 1955, 478 U.N.T.S. 371; Montreal Protocol No. 4 To Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 as Amended by the Protocol Done at The Hague on 28 September 1955, 2145 U.N.T.S. 36 ("Warsaw Convention").

UNITED STATES DISTRICT COURT
For the Northern District of California

11